UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN A. MASANOTTI, JR. and MIDDLESEX MORTGAGE GROUP, LLC,<br><br>    Defendants,<br><br>and<br><br>MARY A. FERRARA,<br><br>    Relief Defendant. | Civil Action No. |

# COMPLAINT

Plaintiff, United States Securities and Exchange Commission ("SEC" or "Commission"), alleges the following against defendants John A. Masanotti, Jr. ("Masanotti") and Middlesex Mortgage Group, LLC ("Middlesex") and relief defendant Mary A. Ferrara ("Ferrara") and demands a jury trial:

## SUMMARY

1. In an ongoing scheme, Masanotti and Middlesex have taken at least $5.9 million from investors through lies and omissions, and have misappropriated millions for Masanotti's personal benefit. From at least January 2016 through the present, Masanotti has deceived multiple investors – mainly seniors – into giving him hundreds of thousands of dollars each, promising to invest the money in a purported pooled investment vehicle advised by Middlesex that was known as the Middlesex Fund or the MMG Fund (the "Fund"). Many of the Fund

investors liquidated securities in retirement accounts to invest in the Fund.

2. In pitching investors, Masanotti explained that the Fund would trade in foreign currencies and securities, as well as buy stock through initial public offerings ("IPOs"). Masanotti touted his successful trading to investors, explaining that he used a lucrative and proprietary method for algorithmic trading in currency futures, and telling at least one investor that this trading strategy resulted in rates of return between 10% and 20% annually. However, Masanotti appears to have invested in no stocks or bonds on behalf of the investors between 2016 and 2023, and his limited foreign currency trading ended in 2016. Rather, Masanotti used the investor funds to make Ponzi-like payments to investors and to pay extravagant personal expenses for himself.

3. To keep investors in the dark about his fraudulent investment program, Masanotti provided clients with bogus monthly account statements from Middlesex reflecting the purported shares each owned in the Fund and the purported investment returns. The account statements were fictional. In reality, Masanotti was using the lion's share of the money to enrich himself, paying personal expenses such as mortgages on his wife's properties in Darien, Connecticut (the "Darien Property") and Bonita Springs, Florida (the "Florida Property"), paying down credit card debt, and making payments for luxury vehicles and a country club membership.

4. In recent weeks, Masanotti has misled and stalled investors who have requested the withdrawal of their funds, claiming that there is a delay in his receipt of funds related to an IPO transaction until March 2024, and asserting that the missing funds are at least partially secured by insurance.

5. Masanotti also claimed to the SEC staff in September 2023 that he lost most of the money trading in cryptocurrencies. However, Masanotti appears to have invested in no crypto assets on behalf of the investors between 2016 and 2023.

6. As of today, there is almost nothing in the Defendants' or Relief Defendant's bank and brokerage accounts – despite the fact that on October 10, 2023, Masanotti's wife, Relief Defendant Mary Ferrara, sold the Darien Property for $1.85 million. Not a penny of the $1.85 million appears to have been used to repay investors.

## **VIOLATIONS**

7. By virtue of the conduct alleged herein, the Defendants violated Sections 17(a)(1), (a)(2), and (a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), (2), and (3)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§240.10b-5(a), (b), and (c)], and Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act"), and Rule 206(4)-8 thereunder [15 U.S.C. §§80b-6(1), (2), and (4), and 17 C.F.R. § 275.206(4)-8].

## **NATURE OF THE PROCEEDING AND RELIEF SOUGHT**

8. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. §77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. §80b-9(d)]. The Commission seeks emergency preliminary relief, including a temporary restraining order against Defendants as to further violations of the federal securities laws, an order against Defendants soliciting, accepting, or depositing additional funds from investors, an asset freeze to preserve assets necessary to satisfy an eventual judgment against Defendants, and additional equitable relief, including a prohibition on the destruction of documents and ordering expedited discovery.

9. The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws by engaging in transactions, acts, practices, and courses of business of the type alleged in this Complaint; (b) ordering Defendants to disgorge any ill-

3

gotten gains with prejudgment interest thereon, pursuant to Section 21(d)(7) of the Exchange Act [15 U.S.C. §78u(d)(7)]; (c) ordering the Relief Defendant, on a joint-and-several basis with Masanotti and Middlesex, to disgorge all unjust enrichment or ill-gotten gains, with prejudgment interest thereon; (d) ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)]; and (e) ordering such other and further relief the Court may deem just and proper.

## DEFENDANTS

10. **John A. Masanotti, Jr.**, age 68, resided in Darien, Connecticut between January 2016 and October 2023 and is the owner and managing member of Middlesex Mortgage Group, LLC, also known as Middlesex Group, LLC. Masanotti does not hold any securities licenses. Masanotti purported to manage a pooled investment vehicle on behalf of investors – the Fund – and he also acted as an unregistered investment adviser for, and owed a fiduciary duty to, the Fund. As an investment adviser, Masanotti had a fiduciary duty to, among other things, act for the benefit of the Fund and exercise the utmost good faith in dealing with the Fund, including making full and fair disclosure of all material facts and employing reasonable care to avoid misleading the Fund.

11. **Middlesex Mortgage Group, LLC** is an LLC organized in the state of Connecticut with its principal place of business in Darien, Connecticut. It is owned by John A. Masanotti, Jr. who is its managing member.

## RELIEF DEFENDANT

12. **Mary A. Ferrara**, age 68, resided in Darien, Connecticut between January 2016 and October 2023. She is Masanotti's spouse and a member of Middlesex Mortgage Group, LLC. Ferrara was the sole owner of the Darien Property, where she and Masanotti resided. On

October 10, 2023, Ferrara sold the Darien Property for $1,850,000. Ferrara is also the sole owner of the Florida Property, a second home where she and Masanotti have also resided.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to Sections 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§77t(d)(1) and 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), 78aa], and Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§80b-9(d), 80b-9(e), 80b-14].

14. Venue lies in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)], Section 27 of the Exchange Act [15 U.S.C. §78aa], and Section 214 of the Advisers Act [15 U.S.C. §80b-14]. A substantial portion of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the District of Connecticut. Between January 2016 and October 2023, Masanotti resided in this district and directed Middlesex's activities from this district.

15. In connection with the transactions, acts, practices, and courses of business alleged in this Complaint, Defendants, directly or indirectly, singly or in concert, made use of the means or instrumentalities of transportation or communication in interstate commerce, or the mails.

16. The Defendants' conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons.

## DEFENDANTS' ACTS IN VIOLATION OF THE FEDERAL SECURITIES LAWS

### A. Masanotti Obtained Investor Funds under False Pretenses

17. Beginning by at least January 2016, Masanotti solicited investments in the Middlesex Fund. Masanotti recruited investors by telling them that the Fund was a pooled

investment vehicle, which traded foreign currency and invested in securities, including equities and bonds.  Many of the investors did not sign any agreements, receipts, or other kinds of documents regarding their investments.

18. In a voluntary interview with the Commission staff, Masanotti claimed that the Fund was created to trade foreign currency through a trading platform (the "Forex Firm"), and that he only stopped using the account in late 2022.  While Masanotti did have a currency trading account at the Forex Firm, a review of the records by the Commission shows that Masanotti engaged in no foreign currency trading through his Forex Firm account after 2016.

19. Masanotti's investors included friends and family, many of whom invested several hundred thousand dollars in the Fund over the course of the last several years.  The majority of investors in the Fund were in their 60s, and at or nearing retirement.  In total, Masanotti solicited at least $5.9 million from investors between January 2016 and the present.

20. While Masanotti's pitch varied with each client, he consistently told those who invested in the Fund that he was experienced, that he alone would be making all decisions in managing their investments, and that their investments would be -- and were -- profitable.

21. To prop up his scheme, Masanotti provided clients with monthly account statements from Middlesex reflecting the purported shares each owned in the Fund and their purported investment returns.  These account statements were fictional, but looked real.  The Fund's holdings were identified on each bogus account statement as "MMG Fund (Class A Shares)".

**B. Masanotti Lied to and Misled Investors to Perpetuate His Fraudulent Scheme**

22. In addition to his lies to obtain the original investments from his family and friends, Masanotti continued to deceive investors after taking their money to perpetuate his investment scheme.

6

23. For example, one investor ("Investor 1") was a friend of Masanotti who, jointly with her husband, invested approximately $725,000 in the Fund in the summer of 2022. Masanotti told Investor 1 that she would receive an annual rate of return between 10% and 20%. Masanotti claimed to use a highly profitable proprietary trading program for foreign currency trading.

24. After first investing in the Fund, Investor 1 received periodic offers from Masanotti to invest in IPOs. According to Investor 1, Masanotti informed her that he bought IPO shares in a cloud technology company (the "Cloud Technology Company") for her Fund account in August 2022, and that by December 2022, she had obtained profits of approximately 20% on the Cloud Technology Company IPO.

25. Masanotti's representations about Investor 1's investment in the Cloud Technology Company were false. Public records show that while the stock enjoyed a brief rise in its share price on the opening day of trading in August 2022, the share price declined steadily over the following three months, and traded at a significant discount to the IPO's opening price by December 2022. In other words, it was impossible for the profits that Masanotti claimed to have generated through this IPO to have been obtained in the relevant timeframe.

26. Further, while the bank records show that Investor 1's overall $725,000 investment was deposited by Masanotti, the records do not show that the funds were invested into the Fund, or even invested at all. Rather, the funds appear to have been directly transferred to Masanotti or to accounts that he controlled and – as described more fully below – misappropriated for personal use and/or paid to earlier investors to keep Masanotti's scheme afloat.

27. Believing that their monthly account statements from Middlesex were real, certain of the Fund's investors occasionally sought the return of funds, or to make a partial drawdown from the profits they believed had been generated by their investment with Middlesex.

28. For example, one investor ("Investor 2") requested a $60,000 withdrawal from her Fund account from Masanotti in March 2023. Based on her review of the account statements, Investor 2 understood from Masanotti that she had substantially more money in her Fund account than $60,000. However, as of today, Masanotti has not honored Investor 2's request to access $60,000 in her Fund account.

29. Another investor ("Investor 3") originally invested $150,000 in the Fund with Masanotti and has received small periodic payments that resulted in Investor 3 receiving the entire principal back. However, because Masanotti provided Investor 3 with fictional monthly account statements, Investor 3 believed that he had an account balance of $300,000 in the Fund, reflecting profits generated by Masanotti over the years. Accordingly, in early 2023, Investor 3 began to ask Masanotti for a drawdown on his account in the Fund. Investor 3's request was met with a variety of delays and excuses from Masanotti, and was never honored.

30. In June 2023, Masanotti stopped sending many Fund clients their monthly account statements, claiming that he was awaiting funds from an IPO transaction that would not be complete until March of 2024, but he assured the investors that they would be fully repaid.

31. In an interview with the Commission staff, Masanotti stated that he lost most of the investor funds while trading cryptocurrency on an unidentified online trading platform in the spring of 2023. Masanotti claimed, without proof, that he notified the Fund investors about the cryptocurrency trading losses. It appears that Masanotti never traded any crypto assets between 2016 and 2023, and no investors have reported being notified of such losses by Masanotti.

### C. Masanotti Misused Investor Funds to Maintain his Family's Lifestyle

32. In addition to the numerous lies and omissions to investors about the safety of their investments, the types of investments that would be made with investor funds, and the purported safety of the investments, Masanotti misappropriated the Fund's assets in violation of his fiduciary duty to the Fund, in order to enrich himself and maintain his family's lifestyle.

33. Between January 2016 and October 2023, bank accounts that Masanotti controlled in the name of Middlesex, or in the names of family members, received approximately $5.9 million from investors.

34. Since that time, Masanotti has used millions of the Fund's assets for his and his family's personal benefit, as well as to make payments to earlier investors to maintain the façade that the Fund was profitable. For example, bank statements for August 2019 show that on August 1, 2019, a bank account in the name of Middlesex received a $30,000 payment from an investor couple. Throughout that month, Masanotti made transfers totaling $29,500 from the Middlesex bank account to bank accounts in his and his wife's name, and thereafter made payments from these accounts to cover, among other things, over $3,000 in luxury car payments, almost $10,000 in mortgage payments, and a payment to a country club.

35. Over the course of the scheme, Masanotti used more than $3 million of the Fund's assets for his and his family's personal benefit, in derogation of his fiduciary duty to the Fund.

### D. After Masanotti Depleted Virtually All Investor Funds, Masanotti and Ferrara Liquidated Their Largest Asset, Paid for In Part with Fraud Proceeds

36. On October 16, 2023, the Commission staff spoke with Masanotti over the phone. Masanotti told the Commission staff that while he and Relief Defendant Mary Ferrara were selling the Darien Property, the closing would occur "the day after tomorrow," *i.e.*, October 18, 2023. The Commission staff asked Masanotti to confirm that the closing on that house would

9

happen that week.  Masanotti further explained to the Commission staff that Ferrara had signed the paperwork for the transaction, since the residence was held in Ferrara's name alone, but that he was not sure if other parties to the transaction had also signed the paperwork.

37. Property records subsequently obtained by the Commission staff show that the closing on the Darien Property occurred on October 10, 2023, and that the Property was sold for $1.85 million.

38. Communications obtained by the Commission staff show that Masanotti and Ferrara were on a group text message chain with the listing agent (the "Listing Agent") for the Darien Property.  On October 10, 2023, the Listing Agent sent a text message to Masanotti and Ferrara, asking: "I hear you are closed.  Have you heard from [the attorney]?"  Ferrara, copying Masanotti, replied:  "Yes, [the attorney's] paralegal said it's done and money will be wired."

39. Bank records confirm that by the time Masanotti was speaking with the Commission staff on October 16, 2023, Ferrara had already received a wire for $1,733,734 (net of brokerage fees), representing the proceeds of the sale of the Darien Property, most of which was immediately wired out to pay multiple mortgages on the Darien Property.

40. Bank records show that, between 2016 and 2023, Masanotti made over $600,000 in payments on the mortgages in Ferrara's name for the Darien Property and the Florida Property.

41. In the end, Masanotti lived a lavish lifestyle at the expense of the Fund, all the while lying to the Fund's investors about their purported account balances and investment returns from Middlesex.

## FIRST CLAIM FOR RELIEF
### (Violations of Section 17(a) of the Securities Act)
### [15 U.S.C. 77q(a)]

42. The Commission realleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

43. By engaging in the acts and conduct alleged above, Masanotti and Middlesex, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, (a) employed or are employing devices, schemes, or artifices to defraud; (b) have obtained money or property by making untrue statements of material fact or omitting material facts necessary to make the statements not misleading; and/or (c) have engaged or are engaging in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers, in violation of Sections 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)
### [15 U.S.C. § 78q(b), 17 C.F.R. § 240.10b-5]

44. The Commission realleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

45. By engaging in the acts and conduct alleged above, Masanotti and Middlesex, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, (a) have employed or are employing devices, schemes, or artifices to defraud; (b) have made or are making untrue statements of material fact or have omitted to state material facts necessary to make the statements not misleading; and/or (3) have engaged or are engaging in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchases and sales of securities, in violation of Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)] and subsections (a), (b), and (c) of Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)].

### THIRD CLAIM FOR RELIEF
**(Violation of Sections 206(1) and 206(2) of the Advisers Act)**
**[15 U.S.C. §§80b-6(1), 80b-6(2)]**

46. The Commission realleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

47. At all relevant times, Masanotti and Middlesex were "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. §80b-2(a)(11)].

48. By reason of the foregoing, Masanotti and Middlesex directly or indirectly, acting intentionally, knowingly, recklessly, or negligently and by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, as an investment adviser: (1) have employed or are employing any device, scheme, or artifice to defraud a client or prospective client; and (2) have engaged or are engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon a client or prospective client.

49. By engaging in the conduct described above, Masanotti and Middlesex violated, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1), 80b-6(2)].

### FOURTH CLAIM FOR RELIEF
**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder**
**[15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8]**

50. The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 41 as if fully set forth herein.

51. At all times relevant to this Complaint, Masanotti and Middlesex acted as investment advisers to the Middlesex Fund, a pooled investment vehicle as defined in Advisers Act Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

52. Masanotti and Middlesex, while acting as investment advisers to a pooled investment vehicle, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts, practices, or courses of business which were fraudulent, deceptive, or manipulative.  Defendants also made untrue statements of material facts and/or omitted to state a material fact necessary to make the statements made, in light of the circumstances in which they were made, not misleading, to investors or prospective investors in the pooled investment vehicle, and otherwise engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

53. By engaging in the conduct described above, Defendants have violated, and, unless enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. §80b6(4)] and Rule 206(4)-8 thereunder [15 C.F.R. § 275.206(4)-8].

## FIFTH CLAIM FOR RELIEF
### Other Equitable Relief, Including Unjust Enrichment and Constructive Trust
### (As to Relief Defendant)

54. The Commission realleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

55. Section 21(d)(5) of the Exchange Act states, "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."

56. The Relief Defendant received ill-gotten funds provided by investors for purposes of investment with Masanotti and Middlesex. Relief Defendant has no legitimate claim to this property. In equity and good conscience, Relief Defendant should not be allowed to retain such funds.

57. As a result, Relief Defendant is liable on a joint-and-several basis with Masanotti and Middlesex for unjust enrichment and should be required to return her share of ill-gotten gains, in an amount to be determined by the Court. The Court should also impose a constructive trust on the ill-gotten gains in the possession of the Relief Defendant.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

A. Enter a temporary restraining order and preliminary injunction to: (a) prohibit Defendants from continuing to violate the Securities Act, the Exchange Act, and the Advisers Act; (b) freeze assets of Defendants and Relief Defendant; (c) prohibit Defendants from soliciting, accepting, or depositing any monies obtained from actual or prospective investors; (d) require Defendants to preserve relevant documents and prohibit the alteration or destruction of such documents; and (e) order expedited discovery to proceed immediately.

      B.      Enter a Final Judgment permanently restraining and enjoining Defendants, as well as their agents, servants, employees, attorneys, and other persons in active concert or participation with them, from directly or indirectly engaging in the conduct described above, or in conduct of similar purpose and effect, in violation of:

           1.      Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

           2.      Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and

           3.      Sections 206(1), (2) and (4) of the Advisers Act [15 U.S.C. §§80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. §275.206(4)-8].

      C.      Enter a Final Judgment ordering Defendants to disgorge their ill-gotten gains or unjust enrichment, with prejudgment interest thereon, to effect the remedial purposes of the federal securities laws.

      D.      Enter a Final Judgment against the Relief Defendant ordering her to disgorge all unjust enrichment and/or ill-gotten gains, on a joint-and-several basis with Masanotti and Middlesex, with prejudgment interest thereon, to effect the remedial purposes of the federal securities laws.

      E.      Enter a Final Judgment ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)];

      F.      Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

      G.      Grant such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

The Commission demands a jury trial in this action of all issues so triable.

Dated: November 9, 2023                     Respectfully submitted,

/s *Rua M. Kelly*
Rua M. Kelly (Mass. Bar No. 643351)
William J. Donahue (Mass. Bar No. 631229)
Alexandra B. Lavin (Mass. Bar No. 687785)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA  02110
KellyRu@sec.gov
Kelly phone:   (617) 573-8941
Facsimile:     (617) 573-4590

*Counsel for Plaintiff Securities and Exchange Commission*

Local Counsel:

/s *David C. Nelson*
David C. Nelson
Assistant United States Attorney
United States Attorney's Office
District of Connecticut
157 Church Street
New Haven, CT 06510
(203) 821-3700
David.C.Nelson@usdoj.gov